Churchill, J.—The
Nashville, Chattanooga and St. Louis Railroad Company, one of the defendants in this action, was originally incorported by the state of Tennessee as the Nashville and Chattanooga Railroad Company, to establish railroad communication between Nashville and Chattanooga, but prior to May, 1879, it had become the Nashville, Chattanooga and St. Louis Railway Company, with communications extending southeast from Chattoonga, and from Nashville northwest by railroad line to Hickman on the Mississippi River, and by the river to St. Louis. Just before May, 1879. the St. Louis and Southeastern Railroad had been sold in foreclosure proceedings. That road consisted of two branches; one running from *543 Nashville to Henderson on the Ohio River in Kentucky, a distance of 146 miles, and the other running from Evansville on the Ohio River in Indiana to St. Louis, a distance of 163 miles. The two branches were connected by a river ferry ten miles long, from Henderson to Evansville. The Nashville, Chattanooga and St. Louis Railroad Company intended to purchase the entire road, which would have given it a new and direct route of its own from Nashville to St. Louis, and at Evansville connection with railroads running north directly to Chicago. The road was sold in two sections; the Chattanooga Company buying the northern section running from St. Louis to Evansville, while the southern section, extending from Nashville to .the Ohio River, was bought by the Louisville and Nashville Railroad Company, the principal rival, of the Chattanooga Company for through traffic. To make its new purchase of any value for the purpose for which it was bought, the Chattanooga Company was compelled to secure a new connection between Nashville and Evansville, and the evidence shows this to have become at once a leading consideration with that corporation.
Three existing corporations with their franchises covered the distance. The Owensboro and Nashville Railroad Company was a Tennessee corporation, extending from Nashville north fifty miles to the Kentucky line at Adairsville. The Owensboro and Nashville Railroad Co. was a Kentucky corporation, extending north from Adairsville across Kentucky to Owensboro, on the Ohio river, and along the south side of the Ohio river to a point four miles north of Owensboro, a distance of about ninety miles. The Evansville, Owensboro and Nashville Railroad Company was an Indiana corporation, extending from Evansville seventeen miles east along the north side of the Ohio river to a point four miles west of Owensboro. No part of these railroads was built, except that the track of the Owensboro and Nashville Railroad was laid from Owensboro to Owensboro Junction, a distance of about thirty-five miles, and the grading was extended and right of way secured from that point to the Tennessee line. The franchises of the other two companies had in some way become the property of the Owensboro and Nashville Railroad Company, but all these existed as distinct corporations.
May 13, 1879, one Anderson agreed to sell to the Chattanooga Company a majority, or $758,000 of the stock of the Owensboro and Nashville Railroad Company (the whole capital stock being $1,156,000), for $145,000, payable one-half in cash on the delivery of the stock and the remainder in nine and twelve months, to be satisfactorily secured. He at the same time guaranteed that the floating debt of *544 that company did not exceed $20,000, and also that the title of the company to the franchises, rights and immunities of the companies “known under the name of the Owensboro and Russellville, and the Evansville, Owensboro and Nashville, and now the Owensboro and Nashville Railroad,” was a good and valid one, and if such title was not satisfactory to the Chattanooga Company the sale was to be void.
On the 20th of May this agreement was communicated to the Chattanooga Company and accepted by them, and the president of the company (E. W. Cole) was directed to carry it into execution, and also to purchase, if possible, the balance of the stock of the Owensboro and Nashville Company.
On the 30th of May, 1879, Cole reported in writing to the Board of Directors of the Chattanooga Company, at a meeting held in Nashville, that in accordance with their orders he had closed with Anderson, and had received from him a certificate for $738,000 of the stock of the Owensboro and Nashville Railroad Company, and had given him the company’s secured notes for one-half of the purchase price and had paid him one-half the balance ($36,250) in cash, and had retained the rest of the purchase price until the title papers could be fully examined. He also reported that he had paid $17,441.71 in full of the floating debt of the company, so far as known, and had received $50,000 of the first mortgage bonds of the Owensboro and Nashville Company, properly executed by its president and secretary, and $300,000 unexecuted blank bonds of the same mortgage and series, and also that he was trying and hoped to buy the balance of its stock, but had not yet succeeded. The board received the report and ordered it spread upon their minutes, and thereupon unanimously adopted the following resolution:
Resolved, By the directors of the Nashville, Chattanooga and St. Louis Railway, that the president of this company is hereby authorized and directed, as soon as the attorneys of this company are satisfied as to the title of the Owensboro and Nashville Railroad Company, to proceed, in his discretion, to complete and equip the Owensboro and Nashville Railroad from its present terminus at Owensboro Junction, Kentucky, to Springfield, in Robertson county, or to Nashville, Tennessee, as well as to put the present track of that road—thirty-five miles—in running order, and to raise the money to do the same by the sale or hypothecation of the first mortgage bonds of the Owensboro and Nashville Railroad, endorsed and guaranteed, piincipal and interest, by the Nashville, Chattanooga and St. Louis Railway; or by the sale or hypothecation of six iter cent forty-year bonds of the Nashville, Chattanooga and St. Louis Railway, with first mortgage on the Owensboro and Nashville Railroad, not to exceed in either case twelve (IS) thousand dollars per mile.
August 5, 1879, the stockholders of the Owensboro and Nashville Railroad Company adopted resolutions authorizing their president and directors, instead of issuing the *545 bonds of the Owensboro and Nashville Railroad Company, to receive as a loan from the Chattanooga Company, upon such terms as might be mutually agreed upon, the bonds of the latter company, not to exceed $1,750,000, and to execute such mortgages or other conveyances as might be necessary to secure said bonds upon the properties of the Owensboro and Nashville Railroad Company, whether situated in Kentucky or Tennessee; and also authorizing their president and directors to contract with the Chattanooga Company to immediately undertake the completion and equipment of the Owensboro and Nashville Railroad from Owensboro to Nashville, and to pay therefor a sum not to exceed ten per cent in excess of the actual cost of such construction and equipment. On the following day (August sixth) the board of directors of the Owensboro and Nashville Railroad Company adopted resolutions directing their president to carry into effect the resolutions of their stockholders by making the contract and agreement therein provided for with the Chattanooga Company.
Between the 30th of May and the 10th of September, 1879, additional purchases of the stock of the Owensboro and Nashville Railroad Company had been made by the Chattanooga Company, and also a quantity of the first mortgage bonds of the Owensboro and Russellville Railroad Company had been purchased. On the 10th of September, 1879, at a meeting of the stockholders of the Chattanooga Company, held at Nashville, the action of their directory in the original purchase of the stock of the Owensboro and Nashville Railroad Company, with the additional purchases just referred to, was unanimously approved, and at the same time a resolution was unanimously adopted, reciting at length the resolutions of the stockholders and directors of the Owensboro and Nashville Railroad Company of August fifth and sixth, and above referred to, and concluding as follows :
“Resolved, That the directors of the said Nashville, Chattanooga and St. Louis Railway he, and they are hereby authorized to execute a contract with said Owensboro and Nashville Railroad Company for the building, completion and equipment of said Owensboro and Nashville Railroad upon such terms as said directory may deem best for the interest of this company.”
The contract contemplated by this resolution was soon after and before November 25, 1879, entered into, but the precise date does not appear.
It remained to provide the necessary funds. The resolution of May 30th, authorized the president (E. W. Cole), of the Chattanooga Company to do this by the sale or hypothecation, either of the first mortgage bonds of the Owensboro and Nashville Company guaranteed by the Chattanooga *546 company, or of the six per cent forty year bonds of the Chattanooga Company, secured by first mortgage on the Owensboro and Nashville Railroad, but not to exceed $12,000 per mile. The action of the stockholders and directors of the Owensboro and Nashville Company above referred to, had in effect, limited the raising of the money to the latter of these methods. Under this resolution and for the purpose indicated by it, and without other authority, so far as appears from the evidence, Cole on the 20th of October, 1879, entered into the contract in suit. The contract appears in the following exhibits:
EXHIBIT A.
New York, October 20, 1879.
The Nashville, Chattanooga and St. Louis Railroad propose to issue its six six per cent forty years’ gold bonds, free from any tax that may be levied on such bonds by the United States government, for §14,000 per mile cf completed road, Chicago division, with first mortgage on the road, road-1 ed, rails, superstructure, right of way, locomotives, cars tools, franch ses, and all other property of every description, belonging to said Chicago division, extending from the city of Nashville, Tenn., Da. Owensboro, ICy., to the city of Evansville, Ind., being about one hundred and fifty-seven miles. Said railroad to he finished as a first-class road, with steel rail from the beginning, with the exception of twenty (20) miles of heavy fish-bar iron already laid, ballasted track, first-class oak cross ties, iron combination bridges, etc.
E. W. COLE, President.
EXHIBIT B.
We, the undersigned, propose to take and pay for the amount of bonds annexed to our name, as indicated above at ninety (90) cents on the dollar. The whole issue to he engraved and deposited iu trust with the Central Trust Company, to he delivered to us by said company, upon payment to the Nashville, Chattanooga and St. Louis railway, our respective proportion at ninety (90> cants on the dollar, as the road is completed.
The following payments, or any part of the same, to be made on account of the road already completed, if called for by the said railway : One installment of §150,000 on the 15th day of November, 1879; §100,000 on the 1st day of December, 1879; and §150,000 on the 1st day of January, 1880, and so on until the W'hole is completed.
Title to property to be approved by attorney for said Trust Company:
George I. Sene)', for self and others............................. §698,000
Kuhn, Leob & Co............................................. 150,000
Edmund D Randolph, President, for self and others.............. 330,000
Kountze Brothers........................................... 150,000
E. D. Tapran, President........................................ 25.000
Roosevelt & Son................................................ 250,000
Julius Hallgarten, self......................................... 25,000
W. T. Walters,.Baltimore, Md., (by telegraph).................... 100,000
J. S. Kennedy & Co............................................ 195,000
G. G. Williams............................................... 25,000
EXHIBIT O.
P. D. Tapper, Pres’t, City: 23d October, 1879.
My Dear Sir—Enclosed please find copy of agreement, from which you will see that the syndicate is made up, the subscription completed. Nothing more can be done until the title to the property has been passed upon by the attorney of Central Trust Company and the bonds are ready for delivery according to the agreement. I go home to NashDlle to-morrow, and will return to New York before anything further has to be done.
Very respectfully your obedient servant,
E. W. COLE, President.
Have sent copy of agreement and note to each subscriber.
*547 This offer as made by Cole exceeded his authority in that it proposed an issue of §14,000 of bonds instead of $12,000 per mile; and for 157 miles, the distance from Evansville to Nashville, instead of 140 miles, the distance from Owensboro to Nashville; and offered security by a mortgage on a completed road for the entire distance or for seventeen miles more than contemplated by the resolution of May 30th.
From the importance to the Chattanooga Company of a connection at Evansville with its recently acquired road from St. Louis to that point, it is very likely than an extension of the Owensboro and Nashville road to Evansville as indicated in the paper of October 20th, was in the minds of its directors before that date, but the first official action taken in that direction, so far as ajypears from the evidence, was on November 25, 1879. Before that day the city of Evansville had offered $100,000 toward the construction of the road if it should be extended to that city. On that day a meeting of the directors of the Chattanooga Company was held in Nashville, and also a meeting of the stockholders of the company at which 39,251 shares of stock were represented and voted upon. At the latter meeting a resolution was adopted ratifying and approving the contract which had been entered into between the Chattanooga Company and the Owensboro and Nashville Company. At both meetings resolutions were adopted accepting the offer of the city of Evansville, approving the extension of the Owensboro and Nashville Eailroad to that city and authorizing its construction and equipment under the contract made between the two companies. On the same day the following contract was approved and executed:
“ Contract between the Nashville, Chattanooga and St. Louis Railway and the Owensboro and Nashville Railroad Company.
“In pursuance oí resolution heretofore passed by both boards of directors and by the stockholders of both the Nashville, Chattanooga and St. Louis Railway and the Owensboro and Nashville Railroad Company.
“The Nashville, Chattanooga and St. Louis Railway agrees to loan a sufficient amount of money to the Owensboro and Nashville Railroad Company with which to build and equip the ro.id of the Owensboro and Nashville Railroad Company from Nashville, Tenn., to Owensboro, ICy., said sum of money to be reimbursed by the latter company to the former company out of the proceeds of the sale of the bonds secured by a mortgage on the property of the latter company when made, including the ten (10) per cent profit allowed the said Nashville, Chattanooga and St. Louis Railway in said resolutions.
“In witness whereof, the Nashville, Chattanooga and St. Louis Railway has caused this contract to be signed by its secretary and its corporate seal attached, and the Owensboro and Nashville Railroad Company has also executed this instrument by its president, this 25th day of November, 1879.
“ The Nashville, Chattahooga and St. Louis Railway,
“By R. C, BRANSFORB, Secretary.
“The Owensboro and Nashville Railroad Company,
“ By E. W. COLE, President.”
It appears from the proceedings of these meetings that E. W. Cole was at this time president of both the Nash *548 ville, Chattanooga and St. Louis Railway Company and of the Owensboro and Nashville Railroad Company, and for that reason the secretary of the former was specially authorized to execute the contract for that company. It also appears that Cole was present in Nashville at this time since he executed on that day the contract on behalf of the latter company. At each of these meetings the following resolution was adopted:
“Be it Resolved, that the contracts made hy the president of this company for the building and equipping of the Owensboro and Nashville Railroad, or any contracts that he may hereafter make, be and the same are hereby ratified and confirmed.”
This resolution and all the other proceedings of both meetings were adopted by a unanimous vote.
December 30, 1819, at a meeting of the directors of the Chattanooga Company, resolutions were adopted directing its president (E. W. Cole) to subscribe $800,000 to the capital stock of the Owensboro and Russellville Railroad Company, $600,000 to that of the Owensboro and Nashville Railroad Company, and $600,000 to that of the Evansville, Owensboro and Nashville Railroad Company, and to issue in payment therefor the six per cent forty-year gold coupon bonds of the Chattanooga Company, under agreements existing between it and the_ several companies; and also directing that the Evansville, Owensboro and Nashville Railway be operated and run as the St. Louis and Chicago division of the Nashville, Chattanooga and St. Louis Railway. From the preamble to these resolutions, it is fair to infer that the interests of the three companies other than the Chattanooga Company had been combined into one company, known as the “Evansville, Owensboro and Nashville Railway Company (consolidated),” and that the Chattanooga Company owned more than three-fourths of its stock, and that the officers and directors of the two companies were the same. How this combination had been effected does not appear, but as against the defendants in this action it is enough prima facie that it was recognized as a fact by the Chattanooga Company. At a meeting of the stockholders of the Chattanooga Company, held January 6, 1880, the action of the directors on December 30, above referred to, was ratified and approved.
From the evidence, it appears that in the ordinary course of business from two to four months would be required to produce the engraved bonds called for by the contract in suit, after the form had been agreed upon and submitted to the engraver, and it does not appear that any had been received from the engraver at the date last mentioned. Not long after that date it was discovered that the Louisville and Nashville Railroad Company (one of the defendants) *549 had succeeded in purchasing a majority of the stock of the Chattanooga Company. This had been done to prevent the construction of the road from Nashville to Evansville by the way of Owensboro, which would be parallel to and a formidable rival to its own line from Nashville to Evansville by the way of Henderson. The result was, the abandonment by the Chattanooga Company of the plan which had occupied its attention since May, 1879, and had so largely involved its means and credit. A part of the plan so abandoned was the issue of the bonds in question.
, At a meeting of the stockholders of the Chattanooga Company, held at Nashville, February 26, 1880, the directors of that company were
“Instructed to settle upon an equitable basis with the subscribers to the $2,198,000 of six per cent bonds, either in connection with the disposition of the Owensboro and Nashville Railroad or without it.”
And afterwards, at the same meeting, they were directed
“To at once offer for sale to the Louisville and Nashville Company the St. Louis and South Eastern Railway and their interest in the Owensboro and Nashville Railroad Company.”
and in selling the interest in the Owensboro and Nashville Railroad Company they were
“ Authorized and instructed to consider the equities of the subscribers to the $2,198,000 of six per cent forty year bonds of the Nashville, Chattanooga and St. Louis Railway, to be secured by first mortgage on the Evansville, Owensboro and Nashville Railroad, and to adjust the same.”
On the 28th of February the directors of the Chattanooga Company appointed a committee of three (including their president, E. W. Cole), to make the sale, subject to their approval. On the third of March this committee submitted terms of sale to the Louisville and Nashville Company. These terms, as to the interest in the Evansville, Owensboro and Nashville Railway were that the Louisville and Company should reimburse the Chattanooga company for all expenditures of every kind made by them on account of that road, and also should.
“ Settle any damages that may accrue on account of the claim of subscribers in New'York or elsewhere, to a certain paper dated the 21st of October, 1879, by which the Nashville, Chattanooga and St. Louis Railway proposed to issue and said subscribers to take two thousand one hundred and ninety-eight ($2,198,000) six per cent forty year bonds, to be secured by a first mortgage on the Evansville, Owensboro and Nashville Railway, if any damages have or shall legally accrue to said parti< s, and to hold said Nashville, Chattanooga and St. Louis Railway harmless on account of the failure to deliver said bonds caused by the sale of and change in the ownership of the stock in the Nashville, Chattanooga and St. Louis Railway.”
On the following day (March 4th) this proposition was accepted by the board of directors of the Louisville and Nashville company, and approved and confirmed by the board of directors, of the Chattanooga company and the presidents of *550 each company were directed to go forward and close a contract accordingly.
March 16, 1880, the following letter was sent by the vice-president of the Louisville and Nashville company, in pursuance of a resolution of the directors of that company, to the Chattanooga company.
New Yobic, March 16, 1880. Col. E. W. Cole, President N., G. and St. L. li’way:
Deab Sib—In order to relieve you from any further attention with regard to the subscription to the bonds of the Nashville, Chattanooga and St. Louis Railway (Chicago division) as per subscription paper, dated the 21st day of October, 1879,1 request to say üiat the Louisville and Nashville Railroad Company, by agreement with a committee from the stockholders of the Nashville, Chattanooga and St. Louis Railway and by resolution passed by its directors on the ¿id day of March, 1880, assumes the settlement of the question of the delivery of said bonds to the subscribers, a list of whom you have kindly furnished me, and said company assumes the settlement of any damages that have been or may hereafter accrue to said subscribers, and you are at liberty to furnish each of the subscribers with a copy of this letter.
Yours truly,
H. VICTOR NEWCOMB, Vice-President.
This letter was on the same day read to the board of directors of the Chattanooga Company by their president, to whom it was addressed, and accepted by them, and a copy sent to each subscriber to the bonds referred to.
Afterwards at a meeting of the stockholders of the Louisville and Nashville Company, held March 26th, and of the stockholders of the Chattanooga Company, held March 30, 1880, the action of the directors of the two companies was ratified and confirmed; and at the latter meeting, the acceptance of the proposition contained in the above letter of H. Victor Newcomb, to settle with the subscribers, was especially ratified and approved.
Afterwards, May 4th, 1880, the board of directors of the Louisville and Nashville Railroad Company adopted the following resolution:
Resolved, That the president be and he is hereby authorized to settle the claims of the subscribers for the contemplated issue of bonds on the Evansville, Owensboro and Nashville branch of the Nashville, Chattanooga and St. Louis Railway, allowing said parties to the extent of four per cent on the amount of bonds contracted to be issued upon such terms as the president may agree upon.
As early as March 25, 1880, the defendants positively refused to issue the bonds referred to.
The complaint was dismissed on the ground that the plaintiffs had failed to show Cole authorized to make the contract in suit, or that his acts were afterward ratified by the company, or that such contract was within the power of the Chattanooga Company, or that the Louisville and Nashville Company had become bound to pay the damages claimed in this action, and leave to go to the jury upon any of these questions, and particularly upon that of rati *551 fication, was denied, and judgment entered accordingly from which this appeal is taken.
The first question to be considered is whether the purchase by the Chattanooga Company of a majority of the stock of the Owensboro and Nashville Railroad Company, a Kentucky corporation, and the consequent direction to their president to complete and equip that road, and to raise the money therefor by the sale of the bonds of the company secured by mortgage on that road was within the power of the company or void as ultra vires. '
The charter of the company gave it the power to buy, hold and sell real and personal estate, to make contracts, and to do all lawful acts properly incidental to a corporation. And such additional power was given as might be convenient for the due and successful execution of the powers granted by its charter, and for the successful construction and management of its work. A subsequent law of Tennessee provided that every existing railroad corporation in this state shall have the right and the power to acquire by purchase and other lawful contract, and have, hold, use and operate any railroad with its franchises belonging to any other railroad corporation, and also the power to borrow money and to issue its bonds therefor, and to secure the payment of such bonds with the interest thereon, by the mortgage of the whole or any part of its railroad and equipments and other property containing such provisions as its directors shall approve; and also the power to consolidate itself with any other railroad corporation whose railroads shall connect with or intersect the road of such existing railroad corporation, or any branch thereof, and so to consolidate itself upon such terms and conditions, and under such corporate name as shall he agreed upon in writing between such corporations. Laws Tennessee 1871, chap 69, § 1.
This act was afterwards extended and applied to “consolidations between railroad companies existing under joint legislation of this and another state or states, and railroad companies incorporated by this or another, or other, state or states, whose roads connect with or intersect each other in this or any other state, and the said act shall be so construed.” Laws Tennessee 1875, chap. 57, § 1.
The charter of a corporation read in connection with the general laws applicable to it is the measure of its powers, and whenever under the charter and such general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation was created, or to which its powers have been extended, will be treated as within its powers. Corporations, in addition to the express and substantial powers conferred upon them by their *552 charters or such general laws, take, by inference or implication, all the reasonable modes of executing the powers conferred upon them, which a natural person* would have in the exercise of similar powers, and by such general laws may be enabled to do acts or make contracts which otherwise would be void as ultra vires. 1 Wood’s Railway Law, 468, 474; Gfreen’s-Brice’s Ultra Vires, 90, 309; Green Bay R. R. Co. v. Union Steamboat Co., 107 U. S. Rep., 98; Branch v. Jesup, 106 id., 468; Vennor v. A. T. and S. F. R. R. Co., 28 Fed. Rep., 581.
In Green Bay B. B. Co. v. Union Steamboat Company, (supra), where the rule is very clearly stated, the charter of the plaintiff in error was for a railroad from Green Bay to the Mississippi River, and authorized it to make such contracts as the convenience and interest of the company might require. By the general laws of Wisconsin any railroad company in that state was authorized to make such contracts with any railroad terminating on the eastern shore of Lake Michigan in Michigan as would enable the roads to be run in connection with each other, and to build and run as a part of their corporate property, such number of steamboats or vessels as they might deem necessary to facilitate the business operations of the company or companies; and also to exercise its rights and franchises in any other state subject to the law of that state. Under its charter and these general laws, a contract with the Union Steamboat Company, a New York corporation, to put two of its steamers on the route between Buffalo and Green Bay to carry freight and passengers, and agreeing that the gross earnings of each should not be less than $45,000 a year, was held not to be beyond the corporate powers of the railroad company. The charter of a Georgia railroad provided that it might at any time incorporate its stock with the stock of any other company on such terms as might be mutually agreed upon. This was held to authorize the transfer of the railroad and all its franchises to another company and the extinguishment of the corporation. On the principle that the greater included the less this power to alienate or extinguish all its franchises was held to include the lesser power of alienating its road or a part of it and the franchises incident thereto and necessary to its operation. Accordingly, a contract to transfer a part of its line to another company, including the franchise for constructing and using the same, and to construct the same for that company, was held to be within its corporate powers. Branch v. Jesup (supra).
The purchasing company in that case had the general power to purchase property of every kind (limited of course by the general objects of its charter) but without the power *553 to incorporate its stock with that of another company; and also had the power by its charter to construct its road over and beyond the line it proposed to purchase.
Its agreement to purchase a part of the line of the other company and to pay for it by the issue of its own stock therefore was also held to be within its corporate powers. A statute of this state (Laws 1839, chap. 213) authorizing any railroad corporation to contract with any other railroad corporation for the use of their respective roads and thereafter to use such roads in the manner prescribed by such contracts has been repeatedly held to authorize contracts by which the one company transferred to the other the exclusive possession and control of its property. Woodruff v. Erie R. Co., 93 N. Y., 609, 616, and cases cited; Ogdensburgh R. R. Co. v. Vermont R. R. Co., Abb., N. S., 249.
The statutes of Tennessee in the most general terms gave to any railroad corporation in the state the right and power to acquire by purchase or other lawful contract, and to hold, use and operate any railroad with its franchises belonging to any other railroad corporation, and to borrow money and issue its bonds for that or for any other debt or liability incurred in the exercise of its lawful purposes, and to consolidate itself upon such terms and conditions and under such name as might be agreed upon with any connecting or intersecting railroad corporation whether of that or any other state, and did not attempt to define the manner in which such ends should be attained. The purchase by the Chattanooga Company of a majority of the stock of the Owensboro and Nashville Eailroad Company for the purpose of gaining the control and practical ownership of the railroad of the latter with its franchises, and the issue of its bonds for the construction and equipment of the road seems clearly in the direction, among the purposes, and within the powers granted and authorized by these general laws.
It is said that a corporation cannot invest its money in the stock of another corporation unless invested with the express or implied authority so to do. But such authority will be implied when the investment is made for a purpose within the powers of the corporation Thus a national bank, though having no authority to deal in stocks, mad take such stocks in payment of a doubtful debt and holy and dispose of the same. If (as we conclude) the purpose for which the stock of the Owensboro and Nashville Eailroad Company was bought, was within the powers of the Chattanooga Company under the laws of Tennessee, then the purchase itself was lawful. Bank of Charlotte v. Bank of Baltimore, 92 U. S. Rep., 122; 1 Wood’s Eailway Law, 517-518.
*554 But the contract in suit, if within the powers of the corporation, was, in the respects heretofore pointed out, clearly in excess of the authority given Cole, and not binding unless ratified. Such ratification may be by express assent, or by acts or conduct of the principal, inconsistent with any other supposition than that he intended to adopt the act done in his name. And this principle applies to corporations as well as individuals. Peterson v. Mayor of New York, 17 N. Y., 449; Hoyt v. Thompson’s Executor, 19 id., 207.
On the 25th of November, 1879, thirty-six days after the contract in suit was made, the directors of the Chattanooga Company adopted a resolution ratifying and confirming the contracts made by Cole for building and equipping the Owensboro and Nashville Railroad. The resolution of May 30th authorized Cole to complete the road, and also to raise the money to do the same, and a contract for either purpose would come within the terms of the resolution of November 25th. If the evidence is such as to warrant a finding that the contract in suit was within the knowledge and in the minds of the directors when this resolution was adopted, it must be held to have been one of the contracts intended to be confirmed by it.
The evidence shows Cole to have been present at that meeting. It shows the fullest accord existing between himself and the directors and stockholders of the company, with respect to the extension of their road to the Ohio river and to Evansville, and the action taken looking to that end, and it fails to disclose any reason why he should have desired to keep the knowledge of this contract to himself. It was his duty to communicate to the directors and stockholders of the company what he bad done with respect to raising money. On that day both the directors and stockholders of the company approved and authorized the extension of the road to Evansville, and removed the limit of $12,000 per mile fixed by the resolution of May 30th, by agreeing without limit “to loan a sufficient amount of money to build and equip the road.” By this action all reason for hesitancy on the part of Cole in making known his action to the company, if any had existed, was removed.
In the subsequent proceedings of the directors and stockholders of the two defendant companies, numerous references are made to the contract in suit, and nowhere is it suggested that it was unauthorized or not the acb of the Chattanooga company. On the contrary, in the resolution adopted by the stockholders of the Chattanooga company, February 26, 1880, the bonds are described as the “bonds of the Nashville, Chattanooga and St. Louis railway.” In *555 the report of this committee, dated March 3, 1880, and which was accepted by the directors and stockholders of both companies, the paper of October twentieth is spoken of as one by which 1 ‘ the Nashville, Chattanooga and St. Louis Railway proposed to issue ” the bonds in question. The report assigns a single reason for the failure to deliver the bonds, viz.: “The sale of or change in the ownership of the stock in the Nashville, Chattanooga and St. Louis Railway.” llExpressio unius est exclusio alterius.”
Nowhere is it intimated that the contract had come recently to their knowledge.
All these are circumstances proper to be considered on the question whether the directors of the Chattanooga Company had not knowledge of this contract when adopting that resolution of ratification of November twenty-fifth, and whether it was not within the scope of that resolution; and also upon the question whether the acts and conduct of the company are not inconsistent with any other supposition than that it intended to adopt and had adopted the act done in its name. The inference to be drawn from such variety of circumstances is for the jury and not for the court.
The court erred in holding the contract beyond the power of the company, and in refusing to submit the question of its ratification to the jury.
An appeal has also been taken in this action from an order denying a new trial asked for on the ground of newly discovered evidence.
The new evidence sought was important both on the question of ultra vires and of ratification.
The new evidence as to the proceedings of the meeting of the board of directors of the Chattanooga Company, December 30, 1879, shows that their attention was called at that time by their president (Cole) to this contract and to the fact that it proposed an issue of $14,000 per mile; and in such way as to imply a previous familiarity on the part of the board with the contract. The report of February 26, 1879, is material to show the purposes for which the stock and franchises of the Owensboro and Nashville Railroad Company were bought, and whether it was a claim of admitted or disputed liability to which the subsequent action of the defendant companies referred. It was the misfortune, not the fault, of the plaintiff that the evidence was not present and offered at the trial.
The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.
• Daniels and Brady, JJ., concur.